IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRACY HARPER and PAULA HARPER,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Case No. 1:22-CV-00062-TS-DAO<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant State Farm's Motion for Partial Summary Judgment. Defendant seeks summary judgment on Plaintiffs' claim for breach of the duty of good faith and fair dealing and seeks a finding that the insurance policy covers only individual wind damaged shingles under the circumstances. For the reasons discussed below, the Court will grant in part and deny in part Defendant's Motion.

I. BACKGROUND

This case involves claims of breach of contract and breach of duty of good faith and fair dealing related to an insurance policy for the roof of Plaintiffs' home. Plaintiffs' home was insured by Defendant from April 15, 2020, to April 15, 2021.[1] Following a windstorm on June 7, 2020, Plaintiffs contacted Defendant to discuss and open a claim regarding damage to the wood-shake roof of their home.[2] Defendant responded to the claim on Plaintiffs' roof by sending

---

[1] Docket No. 22 ¶ 1.

[2] Docket No. 2 ¶¶ 8–9.

Thomas Simone ("Simone"), a self-employed, independent adjuster, to inspect the roof.[3] Simone sent a letter to Plaintiffs on June 26, 2020, with his estimate to replace only the wind-damaged shakes for a total of $495.62.[4] The letter also included an estimate of $277.95 for replacement cost benefits available upon completion of the repairs.[5]

On July 31, 2020, Tyler Karr ("Karr"), a public adjuster with Utah Public Adjusters, hired by Plaintiffs, sent an email to Defendant, "advising of his representation and enclosing his estimate."[6] Karr's report detailed repair costs totaling $93,710.37 and recommended a full roof replacement.[7] Plaintiffs' contract with Karr entitled Utah Public Adjusters to 12% of the amount paid on the claim.[8] After receiving Karr's report, Defendant reinspected the roof using its own adjuster, Brent Spradley ("Spradley"), on August 25, 2020.[9] The revised estimate listed a replacement cost value of $6,324.06.[10]

Plaintiffs filed their Complaint on May 4, 2022, alleging breach of contract and breach of duty of good faith and fair dealing claims against Defendant.[11] On July 19, 2022, Plaintiffs served their Rule 26 disclosures and identified the following damages being sought in this case: (1) repair costs of at least $93,710.37; (2) the public adjuster's 12% fee; and (3) attorneys' fees of 35% of the amount awarded.[12]

---

[3] Docket No. 22 ¶ 3; Docket No. 22-1 ¶ 4.
[4] Docket No. 22-4, at 2.
[5] *Id.*
[6] Docket No. 22 ¶ 6; *see also* Docket No. 2 ¶ 10; Docket No. 22-5.
[7] Docket No. 22 ¶ 6.
[8] *Id.* ¶ 8; Docket No. 29 ¶ 8.
[9] Docket No. 22 ¶ 9.
[10] Docket No. 29 ¶ 31.
[11] Docket No. 2, at 7.
[12] Docket No. 22-10, at 4.

Defendant filed its Motion on September 27, 2023, seeking (1) dismissal with prejudice of Plaintiffs' claim for breach of duty of good faith and fair dealing; and (2) a finding that the Policy covers only individual wind damaged shingles and does not cover full roof replacement if the need for full roof replacement predated the policy period and/or was caused by any excluded cause of loss.[13] Plaintiff responded opposing the Motion on October 27, 2023.[14] Defendant filed a reply on November 10, 2023.[15]

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[17] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[18]

## III. DISCUSSION

A. Breach of Duty of Good Faith and Fair Dealing Claim

---

[13] Docket No. 22.

[14] Docket No. 29.

[15] Docket No. 33.

[16] Fed. R. Civ. P. 56(a).

[17] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[18] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

Defendant argues that Plaintiffs' cause of action for breach of duty of good faith and fair dealing fails as a matter of law because (1) "Plaintiffs have not asserted a theory, and lack evidence, of recoverable damages capable of supporting [this] cause of action[;]"[19] and (2) State Farm's decision to rely on the inspection and opinions of an independent adjuster rather than pay the $93,710.37 requested by Plaintiffs was objectively reasonable, and "the validity of the claim was fairly debatable as a matter of law." The Court agrees with Defendant's first argument, so it will not address the second.

The Tenth Circuit has "noted that, under Utah law, for a breach of the implied covenant, 'an insured is entitled only to those consequential damages reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made.'"[20] This Court has held that fees and costs are not "stand-alone damages sufficient to support a breach of the implied covenant claim."[21] "Plaintiffs must have otherwise suffered damages from the alleged breach before they can assert a claim for the fees and costs associated with bringing the instant action."[22]

In *Andersen v. Foremost Insurance Co.*, the plaintiffs submitted a claim on their insurance policy following a hailstorm that damaged their wood shake roof.[23] The defendant's claim adjuster inspected the roof, found "5 shakes per square that were noted as having hail

---

[19] Docket No. 22, at 2.

[20] *Andersen v. Foremost Ins. Co.*, No. 1:20-cv-115-DAK-DBP, 2021 WL 6087694, at *3 (D. Utah Dec. 23, 2021) (quoting *Blakely USAA Cas. Ins. Co.*, 691 F. App'x 526, 533 (10th Cir. 2017)).

[21] *Blakely v. USAA Cas. Ins. Co.*, No. 2:06-cv-00506-BSJ, 2015 WL 1522752, at *11 (D. Utah Apr. 2, 2015).

[22] *Id.*; *see also Blakely*, 691 F. App'x at 538 ("[T]he [Plaintiffs] must prevail in advancing a theory of damages under the [i]mplied [c]ovenant independent of attorney's fees.").

[23] *Andersen*, 2021 WL 6087694, at *1.

4

damage to them[,]" and tendered $3,956.00 to plaintiffs for the damage.[24] After receiving that estimate, the plaintiffs contracted with a public adjuster to inspect the property. The retained public adjuster recommended a full roof replacement, and the plaintiffs "claim[ed] that the storm caused $102,569 in damage."[25] The plaintiffs filed suit seeking "1) the costs of repairs necessitated by the hailstorm; 2) the public adjuster fee of 10% of the repair costs; 3) the attorneys' fee of 35% of the amount awarded; and 4) prejudgment interest."[26] The court granted the defendant's motion for summary judgment on the plaintiff's breach of the implied covenant of good faith and fair dealing claim because the only damages sought were "breach of contract damages, not breach of the implied covenant of good faith and fair dealing damages."[27] In so doing, the district court found that the Tenth Circuit's decision in "*Blakely* makes clear that the parties' differences regarding the scope of loss is breach of contract damages."[28]

In *Blakely*, the court considered "whether the [plaintiffs] advanced a theory of recoverable damages as part of their claim."[29] The plaintiffs in *Blakely* alleged that defendants "breached the Implied Covenant [of good faith and fair dealing] . . . by failing . . . to reasonably investigate the loss caused by [a] fire in their home."[30] The plaintiffs sought "damages for emotional distress and aggravation of medical conditions, the appraisal and diminution in value of their home, and attorney's fees."[31] The court's determination focused on "whether the

---

[24] *Id.*
[25] *Id.* at *2.
[26] *Id.*
[27] *Id.* at *11.
[28] *Id.*
[29] *Blakely*, 691 F. App'x. at 531.
[30] *Id.* at 532.
[31] *Id.* at 534.

5

[plaintiffs] established that they [had] recoverable consequential damages–i.e., damages not flowing naturally from the breach–under their claim for breach of the Implied Covenant [of good faith and fair dealing]."[32] In finding that the plaintiffs "failed to advance a viable theory of recoverable damages[,]"[33] the court explained that by requesting damages that were compensatory in nature, "not consequential damages for a breach of the Implied Covenant [of good faith and fair dealing,]"[34] the plaintiffs failed to advance a theory of damages sufficient to support a claim for breach of the implied covenant of good faith and fair dealing.[35]

As in *Blakely* and *Andersen*, Plaintiffs here have failed to show damages for their breach of the duty of good faith and fair dealing claim, which entitles Defendant to summary judgment.[36] Like the plaintiffs in *Andersen*, Plaintiffs here seek only the cost of repairs, the public adjuster's fee, and attorneys' fees. If the claim is disputed and additional amounts are owing, as Plaintiffs assert, then "those are breach of contract damages."[37] Additionally, Plaintiffs do not adequately distinguish their case from *Blakely*. And, while there is some disagreement in the district as to whether *Blakely* is correct,[38] the Court will follow the Tenth Circuit's ruling in *Blakely* even though it is unpublished.

---

[32] *Id.* at 533.

[33] *Id.* at 534.

[34] *Id.* at 537.

[35] *Id.* at 542.

[36] *See Baker v. Progressive Ins. Co.*, No. 2:21-cv-00307-JCB, 2023 WL 3044954, at *9–11 (D. Utah Apr. 21, 2023).

[37] *Andersen*, 2021 WL 6087694, at *4.

[38] *See Angus v. State Farm Fire & Cas. Co.*, No. 1:21-cv-00034, 2022 WL 4610047, at *9 (D. Utah Sept. 30, 2022) (finding that "the *Blakely* cases' analysis of Utah Supreme Court precedent is quite thin.").

Therefore, the Court grants summary judgment for Defendant on Plaintiffs' claim for breach of duty of good faith and fair dealing and dismisses the claim with prejudice.

B. Policy Coverage

Defendant seeks a declaration from the Court that "the [P]olicy covers only individual wind damaged shingles and does not cover a full roof replacement if it is found that the need for full roof replacement predated the policy period and/or was caused by any excluded cause of loss."[39]

"Insurance policies are generally interpreted according to rules of contract interpretation. Courts interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole."[40] The language of a policy is considered ambiguous if it is reasonably susceptible to more than one meaning.[41]

The Policy provides that "[Defendant] will pay the cost to repair or replace with similar construction and for the same use on the premises . . . the damaged part of the property covered . . . ."[42] The Policy also states that "[Defendant] will not pay for any loss to the property . . . that consists of, or is directly and immediately caused by . . . wear, tear, decay, marring, scratching, deterioration, inherent vice, latent defect, or mechanical breakdown . . . [or] settling, cracking, shrinking, bulging, or expansion of . . . roofs."[43]

---

[39] Docket No. 22, at 3.

[40] *Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 5, 980 P.2d 685 (internal citation omitted).

[41] *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993) ("A contract may be ambiguous . . . if the terms used to express the intention of the parties may be understood to have two or more plausible meanings.") (internal quotation marks and citation omitted).

[42] Docket No. 22-2, at 30.

[43] *Id.* at 26–28.

According to Defendant, "whether the [P]olicy covers a full replacement under certain facts is an issue of law for the Court."[44] Defendant argues that the Policy excludes coverage based on wear and tear of the roof because "the homeowners had allowed the roof to become exceptionally worn and deteriorated[,]"[45] and allowing a full roof replacement would be an improper "windfall" for Plaintiffs.[46]

Plaintiffs argue that the Policy is a replacement cost policy that entitles the insured "to payment for all necessary costs associated with repairing/replacing the roof with one of like kind and quality, and in certain circumstances such as this [the insured] would end up with a brand new roof."[47] "[R]eplacement cost coverage[,]" Plaintiffs assert, "reimburses the insured for the full cost of repairs, even if that results in putting the insured in a better position than prior to the loss."[48] Plaintiffs state that they paid a higher premium for this replacement cost policy.[49] According to Plaintiffs, Defendant needs to pay to replace shakes that were not damaged by the wind because the proper repair method requires it, and there will be consequential physical damage incurred in making the repairs when the wind-damaged shakes are repaired.[50]

As Defendant notes, there is no published opinion in Utah that addresses a policy provision like the one at issue here. Defendant points to a District of Hawaii case where "[t]he

---

[44] Docket No. 22, at 3.

[45] *Id.* ¶ 4.

[46] Docket No. 33, at 6–7.

[47] Docket No. 29, at 12.

[48] *Id.* (citing *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349 (Ind. 1982)).

[49] *Id.* at 11, 19.

[50] *Id.* at 17; Utah Admin. Code § R590-190-13(1)(a)(i) ("If a policy provides for the adjustment and settlement of first party losses based on replacement cost, the following apply . . . if a loss requires repair or replacement of an item or part, any significant physical damage incurred in making such repair or replacement not otherwise excluded by the policy shall be included in the loss.").

[p]olicy provide[d] coverage for accidental direct physical loss, but preclude[d] recovery for loss that result[ed] from wear, tear, or deterioration."[51] There, the court found that "coverage [was] excluded for loss resulting from wear, tear, or deterioration."[52] However, the plaintiff argued that the defendant should pay for a full roof replacement because of the roof's overall age and condition. Here, Plaintiffs argue that a full roof replacement is warranted due to the consequential damage that a proper repair of the wind-damaged shakes will allegedly cause.

At the summary judgment stage, if there remains an issue of material fact, the Court must determine whether a reasonable jury could find for the nonmoving party in the face of all the evidence presented.[53] Although Defendant argues that only "a few shakes" need to be replaced, there is a dispute about how much damage the windstorm caused to the roof and what consequential damage, if any, would be incurred while repairing the damaged shakes. There is also a dispute as to the condition of the roof prior to the storm.[54]

Further, the record indicates that the roof has not yet been repaired, so the question of what the policy is required to cover is not ripe for summary judgment. Whether the Plaintiffs need a new roof depends upon what happens during repair. Defendant is requesting an interpretation of the Policy that is contingent on future events that have not and may never take place.[55] Since the roof has not yet been repaired, the extent of the replacement required, and thus

---

[51] *Marcos v. State Farm Fire & Cas. Co.*, No. 20-00336 KJM, 2022 WL 2774494, at *5 (D. Haw. June 13, 2022) (internal quotation marks omitted).

[52] *Id.*

[53] *See Anderson*, 477 U.S. at 249; *Clifton*, 924 F.2d at 183.

[54] Docket No. 29 ¶¶ 18–20; Docket No. 22 ¶¶ 4, 11–12.

[55] *Butman Fam. Invest. Ltd. P'ship v. Owners Ins. Co.*, No. 19-cv-01638-KLM, 2020 WL 1470801, at *5 (D. Colo. Mar. 25, 2020); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) (finding claims not ripe where they are premised on a "contingent future event[] that may not occur as anticipated, or indeed may not occur at all") (internal quotation marks and citation omitted).

what the policy is required to cover, is not ripe for summary judgment. At this time, the Court declines to generally interpret the terms of the Policy based on a set of facts in dispute. Instead, interpretation of the terms of the Policy will be appropriately provided in the jury instructions at trial.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No. 22) is GRANTED IN PART AND DENIED IN PART as set forth above.

DATED this 23rd day of July, 2024.

BY THE COURT:

_____
TED STEWART
United States District Judge